EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
FRANK D. KORTUM
California Bar No. 110984
Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5710
     Facsimile: (213) 894-7170
     E-mail:    frank.kortum@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>              v.<br><br>$15,000.00 IN U.S. CURRENCY,<br><br>          Defendant. | No. EDCV 16-01166-DSF (KKx)<br><br>**RESPONSE TO SUR-REPLY**<br><br>Date:  December 5, 2016<br>Time:  1:30 p.m.<br>Ctrm:  7D (1st Street Courthouse) |
| DAVID SCOTESE,<br><br>          Claimant. | |

In its motion for summary judgment ("MSJ"), the government established that the defendant currency is subject to forfeiture because claimant Scotese failed to register with the Financial Crimes Enforcement Network ("FinCEN") as a "money transmitter."  Motion for Summary Judgment at p. 9 (Dkt. 24).  After the government filed a reply in support of its motion (Dkt. 29), Scotese filed a sur-reply

(Dkt. 30) in which he asserted, based on citations to a chain of definitions, that because no "receiving bank" was involved in his bitcoin deals he was not required to register with FinCEN as a "money transmitter" who "engaged in the transfer of funds" within the meaning of 31 C.F.R. § 1010.100(ff)(5)(i)(B).[1]  Sur-reply at p. 2:26 (arguing that a "funds transfer" must involve a "receiving bank.").[2]  As will be shown below, Scotese's assertion is without merit.

Scotese's restrictive interpretation of what constitutes a "money transmitter" is inconsistent with the statutory definitions of that term.  First, 18 U.S.C. § 1960(a), which prohibits the operation of unlicensed money transmission businesses -- and is the basis for forfeiture pursuant to the proposed amended complaint -- defines "money transmitting" as "transferring funds on behalf of the public by <u>any and all means</u> . . ." 18 U.S.C. § 1960(b)(2)(emphasis added).[3]

---

[1] 31 C.F.R. § 1010.100(ff)(5)(i) provides a definition of "Money Transmitter."  As shown below, definitions of related terms are set forth in 18 U.S.C. § 1960(b)(2)(definition of "money transmitting") and 31 U.S.C. 5330(d)(1)(definition of "money transmitting business").

[2] Scotese notes that the definition of "funds transfer" contains the term "payment order," which is in turn defined as "[a]n instruction of a sender to a receiving bank . . . ." Sur-Reply at 2.  The preamble to the definitions section of the FinCEN regulations provides that "where not . . . manifestly incompatible with the intent thereof, terms shall have the meanings ascribed in this subpart."  31 C.F.R. 1010.100.  The government respectfully suggests that Scotese's interpretations of the applicable definitions are "manifestly incompatible" with the intent of Congress in enacting Section 1960.  (As the government pointed out in its Reply, Congress enacted Section 1960 "to prevent innovative ways of transmitting money illicitly."  Reply at 5:25-27 (quoting <u>United States v. Murgio</u>, ___ F.Supp.3d ___, 2016 WL 5107128 at *4 (S.D.N.Y. Sept. 19, 2016).)

[3] Section 1960 contains no language that supports Scotese's position (Sur-Reply at p. 2:26) that a bank must be involved in order for a transfer of funds to occur.  Requiring such involvement would
*(continued)*

Section 1960 also defines an "unlicensed money transmitting business" as a money transmitting business that "fails to comply with the money transmitting business registration requirements under section 5330 of [T]itle 31, United States Code, or regulations prescribed under such section." 18 U.S.C. § 1960(b)(1)(B).[4] 31 U.S.C. § 5330 in turn defines a "money transmitting business" as one that (A) provides, inter alia, "currency exchange . . . services . . ."; (B) "is required to file reports under 31 U.S.C. § 5313; and (C) "is not a depository institution (as defined in section 5313(g)." 31 U.S.C. § 5330(d)(1).

Scotese is well within the statutory definition of a "money transmitter" under both of the statutes discussed above. With respect to Section 1960, Scotese cannot seriously dispute that he caused the transfer of funds from Ochle to Scotese, and the contemporaneous transfer of Bitcoin from Scotese to Ochle. Such conduct is squarely within the scope of both 18 U.S.C. § 1960(b)(2), 31 C.F.R. § 1010.100(ff)(5)(i)(A) & (B), and the FinCEN guidance discussed in the government's reply (Dkt. 29 Exh. "G").

With respect to Section 5330, Scotese has effectively admitted that Bitcoin is a form of currency,[5] and the evidence demonstrates conclusively that Scotese aggressively bought and sold Bitcoin and was therefore required to register with FinCEN. FinCEN Guidance

---

be inconsistent with the definition of a "money transmitter" as "[a]ny . . . person engaged in the transfer of funds." See 31 C.F.R. 1010.100(mm) ("person" includes an "individual").

[4] 31 C.F.R. § 1010.100 is a regulation promulgated pursuant to 31 U.S.C. § 5330. United States v. Budovski, No. 13cr368 (DCL), 2015 WL 5602853 at *5 (S.D.N.Y Sept. 23, 2015).

[5] Scotese has not disputed the government's assertion that "Bitcoin is a form of currency within the meaning of Section 1960." MSJ at 9:5-6.

3

(Reply Exh. "G") at 3 ("An administrator or exchanger [of virtual currency] that . . . transmits . . . <u>or</u> . . . buys and sells convertible virtual currency for any reason is a money transmitter under FinCEN's regulations . . . ." (emphasis added)). In his opposition, Scotese argued only that he was not a money transmitter because he did not transmit currency from "one person . . . to another person." Opp. at 3 n.1. However, FinCEN's regulations clearly state that the element of transmission may be satisfied by a transfer to "another *location* or person by any means." 31 C.F.R. § 1010.100(ff)(5)(i) (emphasis added). The FinCEN Guidance makes clear that when an exchanger or administrator of virtual currency accepts real currency from an individual and in exchange sends "value that substitutes for currency" (<u>i.e.</u>, bitcoin) to the electronic account of that individual, "transmission [has occurred] *to another location*." Reply Exh. "G" at 4.[6] Scotese admitted that he received

---

[6] The quoted section of the Guidance appears under a subsection entitled "Centralized Virtual Currencies." The principle that "another location" may be an individual's account (for the purposes of defining money transmission") applies equally to decentralized currencies such as bitcoin, which are also held in accounts. As the court explained in <u>S.E.C. v. Shavers</u>, No. 4:13-CV-416, 2014 WL 4652121 (E.D. Tex., Sept. 18, 2014):

> Bitcoins are held at, and sent to and from, bitcoin 'addresses.' A bitcoin 'wallet' is a software file that holds bitcoin addresses. Along with each bitcoin address, a bitcoin wallet stores the 'private key' for the address, essentially a password used by the holder to access the bitcoins held at the address, as well as the transaction history associated with the address. Whoever has the private key for a bitcoin address controls the bitcoins held at that address.

2014 WL 4652121 at *1; <u>accord</u> <u>United States v. 50.44 Bitcoins</u>, Civil Action No. ELH-15-3692, 2016 WL 3049166 at *2 n.4 (D. Md. May 31, 2016); <u>see generally</u> <u>United States v. American Express Co.</u>, 88 F.Supp.3d 143, 190 (S.D. N.Y. 2015)(electronic wallets are a form of account), <u>rev'd on other grounds</u>, 838 F.3d 179 (2d Cir. 2016).

$15,000 from Ochle, and in exchange sent Bitcoin to Ochle's "bitcoin address."  MSJ Exh. "A" at p. 5 (Dkt. 22-2 at p. 6 (PACER pagination)).  Scotese's transmission of Bitcoin to Ochle's bitcoin address constituted a "money transmission" of value to another location, as explained above.  Scotese was therefore required to report his transaction with Ochle pursuant to 31 U.S.C. § 5313 (which requires the reporting of transactions in excess of $10,000),[7] thereby satisfying the second element of Section 5330's definition of money transmitting business.  See 31 U.S.C. § 5330(d)(1)(B).[8]  Finally, Scotese is not a "depository institution" within the meaning of 31 U.S.C. § 5330(d)(1)(C).  Because all three elements of Section 5330(d)(1) are satisfied here, Scotese was required under 18 U.S.C. § 1960 to register with FinCEN.  His failure to do so subjects the defendant currency to forfeiture as proceeds of a transaction in

---

[7] 31 U.S.C. § 5313(a) requires reporting by "domestic financial institutions," which includes "currency exchange[s]."  Id. § 5312(a)(2)(J).  Scotese's failure to report the transaction with Ochle is a separate and independent basis for forfeiture of the defendant currency.  31 U.S.C. § 5317(c)(2)(providing for forfeiture of property "traceable to any . . . violation . . ." of 31 U.S.C. § 5313).

[8] 31 C.F.R. § 1010.311 implements 31 U.S.C. § 5313 (United States v. Lang, 732 F.3d 1246, 1248 (11th Cir. 2013)) and requires the reporting of currency transactions in excess of $10,000.

1  violation of 18 U.S.C. § 1960.  18 U.S.C. § 981(a)(1)(C).  This Court
2  should grant the government's motion for summary judgment.
3
4  Dated: November 21, 2016          Respectfully submitted,

                                    EILEEN M. DECKER
5                                   United States Attorney
                                    LAWRENCE S. MIDDLETON
6                                   Assistant United States Attorney
                                    Chief, Criminal Division
7                                   STEVEN R. WELK
                                    Assistant United States Attorney
8                                   Chief, Asset Forfeiture Section
9
                                         /s/ Frank D. Kortum
10                                  FRANK D. KORTUM
                                    Assistant United States Attorney
11
                                    Attorneys for Plaintiff
12                                  UNITED STATES OF AMERICA